**TOMY CORPORATION and Pricewell (Far East) Limited, Plaintiffs.**

v.

**P.G. CONTINENTAL, INC., Henry L. Dubs Associates, Inc., Atco Electronics, Ltd., Brentano's, Inc., and Vanguard Jewelry Corp., Defendants.**

**No. 82 Civ. 0940 (WK).**

United States District Court, S. D. New York.

March 17, 1982.

Lewis H. Eslinger, Curtis, Morris & Safford, P.C., New York City, for plaintiffs.

Aaron B. Karas, New York City, for defendants P. G. Continental, Inc. and Henry L. Dubs Associates, Inc.; Walter D. Ames, Watson, Cole, Grindle & Watson, Washington, D. C., of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiffs in this unfair competition case seek a preliminary injunction against defendants P.G. Continental, Inc. and Henry L. Dubs Associates, Inc. (hereafter "defendants").[1] For reasons set forth below, we deny such relief.

### Facts

The following facts were established at a hearing held before us on February 22 and 23, 1982.

1. Defendant Vanguard Jewelry Corp. has entered into a final Judgment on Consent with plaintiffs; defendant Atco Electronics, Ltd., which appeared pro se through its president Joseph Atzmon, stated on the record that it agreed to entry of a final Judgment on Consent; and defendant Brentano's Inc. stated on the record through counsel that it has discontinued its sale of allegedly infringing items. Only P.G. Continental, Inc. and Henry L. Dubs Associates, Inc. opposed plaintiffs' motion.

*The Product*

Plaintiffs distribute the popular "PYRAMINX" puzzle. Made of white plastic, the PYRAMINX is pyramidal in shape and has four triangular faces. These faces—or sides—are themselves divided into nine movable, triangular components, each individually adorned with a solid-colored applique. In all, there are four colors of applique: blue, green, orange and yellow. When the puzzle is in the "start" position, all of the appliques on each side are the same color. It is therefore convenient to refer to the puzzle, when in this position, as having solid-colored sides, even though—since the appliques are smaller than the triangular components—a border of the white plastic substrata actually surrounds every applique. The object of the puzzle is for the player to manipulate the triangular components until the colors are scrambled; and to then rearrange those components until the puzzle is again solid-sided.

Plaintiffs package their puzzle in a close-fitting, pyramidal container of clear lucite mounted on a thin black triangular base. The lucite top is joined to the base with three distinctive gold labels displaying the PYRAMINX name.

Defendants' "PYRAMID P.G. CO. PUZZLE" is virtually identical in appearance to plaintiffs' product. It, too, is a pyramidal puzzle of white plastic; it has nine triangular components on each side, each of which is adorned with a solid-colored applique; and its start position is also solid-sided. Its appliques are blue, green, orange and gold; and the shades of blue, green and orange are virtually indistinguishable from the corresponding shades found on plaintiffs' puzzle. It is the same size and shape as plaintiffs' puzzle, and functions the same way.

Like plaintiffs' PYRAMINX, defendants' PYRAMID P.G. CO. PUZZLE is packaged in a clear lucite container on a black base, obviously designed to display the puzzle in all its glory. Defendants' containers, however, are not pyramidal; they are, instead,

dome-shaped, and sit on a circular base. The legend "P.G. CO. PYRAMID PUZZLE" is printed in bold silver letters on the base, and embossed on the lucite dome. No gold labels are employed. The puzzle, moreover, is sold in displays which clearly identify defendants as its source.

*Presence in the Market*

Both plaintiffs and defendants claim to have ordered their puzzles from manufacturers in Hong Kong or Taiwan. Plaintiffs have marketed their puzzle in the United States since June 1981. (Tr. 7).[2] In all, they have sold somewhere in the neighborhood of 2 million units to date. (Tr. 7). The first 200,000 of these, however, varied somewhat from the current model: 900 had appliques of blue, green, *red* and *gold*; and the rest had appliques of blue, green, *red* and yellow, rather than the blue, green, *orange* and yellow of the current version. (Tr. 74).

Plaintiffs commenced advertising their current—blue, green, orange and yellow-sided—product on television in September 1981. (Tr. 81). They have spent more than $900,000 on television advertisements spanning three separate six-week advertising "flights". (Tr. 19, 92). Each advertisement is in color, is directed towards children aged 6 to 11, and features plaintiffs' PYRAMINX puzzle, bereft of its packaging. (Tr. 83, 112, 202). Plaintiffs have contracted for an additional $2 million worth of television advertisements. (Tr. 17, 84).

Defendants first ordered a pyramid puzzle in late May 1981, but did not commence selling the puzzle in substantial numbers until November. (Affidavit of Parviz Riahi, Exhibit A to defendants' March 3, 1982 Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction). Defendants have not advertised their puzzle, either on television or otherwise.

Plaintiffs' is the only pyramidal puzzle which has been advertised on television in this area. (Tr. 84–85).

---

**2.** "Tr." refers to the transcript of the hearing on plaintiffs' motion for a preliminary injunc-

tion, held February 22 and 23, 1982.

*The Survey*

Plaintiffs offered the testimony of Myron Helfgott, an experienced poll-taker who has previously conducted surveys for these plaintiffs and for other toy companies. Mr. Helfgott testified that he designed and supervised a survey in which a total of 600 children, aged 6 to 15, were interviewed at four different shopping malls in the greater New York area early in February of this year.

These interviews were broken down into three separate studies, each administered to a total of 200 children. In the first two studies, the children were simply shown *either* plaintiffs' or defendants' unpackaged puzzle. They were then asked whether they knew the puzzle's brand name; if so what it was; whether they had ever seen the puzzle advertised on television; and if so, under what name. A substantial number identified *both* plaintiffs' and defendants' puzzle by the name PYRAMINX or some similar-sounding word; and 90% or more of the children polled in *both* surveys said they had seen the puzzle on television. Mr. Helfgott considered it significant that defendants' product evoked such responses in substantially similar numbers as did plaintiffs'.

The third study was designed as a check on the other two. (Tr. 119, 173). In this study, the children were shown five unpackaged pyramidal puzzles: plaintiffs'; defendants'; and three specially constructed puzzles which—although the same size and shape as plaintiffs' and defendants' puzzles—were adorned with four different patterned (rather than solid-colored) types of applique. The children were then asked whether they had seen any of the puzzles on television; and if they knew its (or their) names. Altogether, 70% of those polled identified plaintiffs' product as a PYRAMINX, and 51% gave similar responses with respect to defendants' product. Approximately 43% recognized both plaintiffs' and defendants' puzzles as having been seen on television. (Tr. 122–23). No more than 2% of those polled evinced any recognition whatsoever of the specially constructed patterned puzzles.

In none of the studies was any child presented with a puzzle having solid-colored sides in colors dissimilar to those used by plaintiffs.

*Discussion*

Defendants' unpackaged blue, green, orange and gold PYRAMID P.G. CO. PUZZLE is clearly confusingly similar to plaintiffs' blue, green, orange and yellow PYRAMINX. Nor is this confusion dissipated by defendants' distinctive packaging and labels. We have no doubt that the average purchaser—whether child or adult—focusses on the puzzle itself: such, indeed, would appear to be the purpose behind the transparent package designs.

At the close of the hearing, we were accordingly disposed to grant the relief here sought. We were particularly impressed with what seemed to be the obvious fact that defendants (who have done no advertising) were profiting from the market created by plaintiffs' extensive advertising over the past 5 months. However, this is not enough.

Plaintiffs do not—and could not—claim a protectible interest either in the puzzle itself *or* in the idea of adorning such a puzzle with solid-colored appliques initially arranged to form solid-colored sides. Their request that defendants be enjoined from violating their rights in the tradedress of the PYRAMINX puzzle accordingly boils down to only this: that defendants be barred from selling pyramidal puzzles having the precise color combination (or a confusingly similar variation thereof) contained in plaintiffs' PYRAMINX. (Tr. 217). In order to prevail on the merits as to that request, plaintiffs must establish at trial either that defendants *intentionally copied* their product, hoping to profit from the market plaintiffs had created; or that the particular color scheme plaintiffs employ—and which they here seek to protect—has

achieved *secondary meaning*.[3] (Tr. 11–12; see also *Perfect Fit Industries, Inc. v. Acme Quilting Co.* (2d Cir. 1980) 618 F.2d 950). We conclude that plaintiffs have not borne the burden of demonstrating a probability that either of these propositions will be established at trial.

*Intentional Copying*

It has not been shown that it is more likely than not that defendants copied plaintiffs' color scheme. For copying to be established, it would at least have to be shown that defendants were aware of plaintiffs' color scheme at the time they placed their initial orders for pyramidal puzzles. On the present record, however, there is no direct evidence on this question. While defendants placed their first order in late May 1981, plaintiffs did not introduce their puzzle until June; and as initially marketed plaintiffs' product did not even use the color scheme defendants are now claimed to have copied. It is relevant, moreover, to the issue of defendants' wrongful intent that their packaging is readily distinguishable from that used by plaintiffs, and that their name is prominently placed on both their packages and their marketing displays. Moreover, both parties claim to have ordered their puzzles from manufacturers in Hong Kong or Taiwan. It would therefore be wholly inappropriate to conclude on the present state of the record that the similarity in the two products' color design resulted from any deliberate choice on the part of these defendants.

*Secondary Meaning*

■ Nor have plaintiffs borne the burden of establishing the probability that their color scheme has achieved secondary meaning. It is axiomatic that in order to be entitled to protection under the Lanham Act, a plaintiff must demonstrate that the mark for which protection is sought—here, the particular color scheme employed on plaintiffs' PYRAMINX puzzle—is a mark of " 'distinction identifying the source of

the article and that purchasers are moved to buy [or—in the case of children—moved to select] it because of its source'." *Remco Industries, Inc. v. Toyomenka, Inc.* (S.D.N.Y.1968) 286 F.Supp. 948, 952, *aff'd* (2d Cir.) 397 F.2d 977, quoting *Blisscraft of Hollywood v. United Plastics* (2d Cir. 1961) 294 F.2d 694, 697.

The difficulty with plaintiffs' case is that they concede—as they must—that defendants are entitled to sell pyramidal puzzles with solid-colored sides, so long as their use of colors does not lead children to select defendants' product under the misapprehension that they are getting the puzzle advertised by plaintiffs. (Tr. 217). However, there is not a scintilla of evidence before us that it is the *particular colors or shades* employed by defendants—as opposed to their wholly permissible use of solid-colored sides—which caused the reactions shown in plaintiffs' survey. The following exchange, which occurred during cross-examination of plaintiffs' survey taker, is illustrative (Tr. at 176):

Question: "This questionnaire [used in the survey] then does not establish whether it's a *particular series* of four colors or *any* four colors?"

Answer: "Right."

By running the third study plaintiffs' expert in effect acknowledged that the first two did not establish his point. (See Tr. 173). Yet, the third study fails to shed any light on the crucial question whether or not the childrens' reactions were triggered by the particular colors found on plaintiffs' puzzle.

It is clear, moreover, that plaintiffs would have had no difficulty designing a survey which would answer this question. Their problem being to establish that the children's reaction was in response to a *particular* color scheme (as opposed to *any* combination of solid-colored sides), they need merely have included a single puzzle composed of some different combination of solid colors in the survey taken for purposes

---

**3.** Although plaintiffs suggested at one point (Tr. 17) that they considered their puzzle's size and shape to be part of its trade dress, the poor response obtained to the puzzles constructed for purposes of their third study would seem to eliminate this contention. (See Tr. 119).

of this motion. We can only conclude that plaintiffs' decision not to do so was deliberate, stemming from a realization that it would not have been in their interest to conduct such a test.

*Conclusion*

 We accordingly hold that plaintiffs have failed to establish a likelihood of success on the merits. How they may fare at trial, of course, remains to be seen.

We conclude, moreover, that plaintiffs have not established that the balance of hardships tips in their favor. The hardship to plaintiffs is speculative (how many sales they will lose as the result of competition from these *particular* defendants[4]), while that to defendants is palpable (they would be unable to move any of their inventory as presently constituted).

Plaintiffs' motion for a preliminary injunction as to defendants P. G. Continental, Inc. and Henry L. Dubs Associates, Inc. is accordingly denied.

SO ORDERED.

---

**4.** Cf. fn. 1, *supra*. Other lawsuits have, in addition, been brought against other distributors of similar puzzles.