**METRO KANE IMPORTS, LTD., Plaintiff,**

v.

**FEDERATED DEPARTMENT STORES INC. d/b/a Bloomingdales Department Stores, the Conrans Stores, Inc., Hanover House, a division of the Horn & Hardart Companies, Inc. and Brookstone Company, Inc., Defendants.**

No. 85 Civ. 8306 (RWS).

United States District Court, S.D. New York.

Dec. 2, 1985.

Kane, Dalsimer, Kane, Sullivan & Kurucz (John Kurucz, Ronald R. Santucci, Scott E. Thompson, New York City, of counsel), for plaintiff.

Proskauer Rose Goetz & Mendelsohn (Jacob Imberman, Barry G. Felder, New York City, of counsel), for defendant Federated Dept. Stores, Inc.

Cowan, Liebowitz & Latman (Elliot M. Schachner, New York City, of counsel), for defendant Hanover House.

Kenyon & Kenyon (Robert D. Fier, New York City, of counsel), for defendant Brookstone Co., Inc.

SWEET, District Judge.

Plaintiff Metro Kane Imports, Ltd. ("Metro Kane") by order to show cause heard on October 25, 1985 introduced another chapter in its effort to protect its rights in the Mighty OJ, a mechanical orange juice squeezer in robotic form which has already received judicial scrutiny. Metro Kane now seeks a preliminary injunction against the continued sale of certain mechanical orange juice squeezers by defendants Bloomingdale's Department Stores ("Bloomingdale's"), Hanover House, a division of the Horn & Hardart Companies, Inc. ("Hanover House"), and Brookstone Company, Inc. ("Brookstone"). Metro Kane has alleged irreparable injury arising out of the competing orange juice squeezers' infringement upon its juicer's protectible trade dress pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), violation of New York common law, and the "Mold Statutes" of California, Michigan and Tennessee. By motion filed November 6, 1985, Bloomingdale's, joined by the other defendants, has asserted that this action must be dismissed for lack of subject matter jurisdiction under the Lanham Act. For the reasons set forth below, Bloomingdale's motion is denied, and Metro Kane's motion is denied in part and granted in part.

**1. Subject matter jurisdiction**

Bloomingdale's relies first on collateral estoppel. In *Metro Kane Imports Ltd. v. Rowoco, Inc.*, 618 F.Supp. 273 (S.D. N.Y.1985), this court held that Metro Kane failed to demonstrate the existence of secondary meaning with regard to its marketing of the "Mighty OJ" juicer and denied its federal claim for injunctive relief against Rowoco, Inc. ("Rowoco"), the importer of the item sold by Bloomingdale's. Opinion at 4. This opinion resulted from a remand from the Court of Appeals from an earlier denial of an injunction against Rowoco on a different basis. Since secondary meaning is an essential element of a Lanham Act claim, Metro Kane's federal statutory claim was denied. There is no question that Metro Kane is the same party in both the earlier case and the present one, that the legal issue is identical, that it was resolved by a final judgment on the merits, and that there was an ample opportunity to litigate this issue in the first action. As such, the defendants have demonstrated each of the essential requirements of collateral estoppel. *See Tole S.A. v. Miller,* 530 F.Supp. 999, 1003 (S.D.N.Y.1981), *aff'd mem.* 697 F.2d 298 (2d Cir.1982).

However, an exception to collateral estoppel is recognized where an intervening factual change has altered the basis underlying the earlier legal conclusion. 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.448, at 836–37 (1984). *See Miss Universe, Inc. v. Kidney Foundation of New York, Inc.*, 214 U.S.P.Q. (BNA) 199 (S.D.N.Y.1981) and Metro Kane asserts such a change. Metro Kane has indicated that it intends to offer consumer surveys supporting its claim of secondary meaning. Such surveys are generally regarded as the most probative evidence of secondary meaning.

While a relatively short period of time has expired since the previous litigation, there is no basis to hold that a party is precluded as a matter of law from demonstrating that secondary meaning can be acquired within a few months. Indeed, in this day of modern communications it is frequently the case that a particular product or name becomes familiar to many consumers overnight and the question of whether secondary meaning exists is dependent on a variety of factual questions and determinations. *See Universal City Studios v. Nintendo Co.*, 578 F.Supp. 911,

925 (S.D.N.Y.1983), *aff'd*, 746 F.2d 112 (2d Cir.1984). *See also* J. McCarthy, *Trademarks and Unfair Competition* § 15:10 (1984).

The defendants' reliance on *GAF Corp. v. Eastman Kodak Co.*, 519 F.Supp. 1203, 1214 (S.D.N.Y.1981), is not persuasive since that case involved antitrust issues which do not necessarily have the temporal volatility of the Lanham Act issues presented here. Moreover, the *GAF* opinion applied collateral estoppel in deciding a motion for summary judgment after extensive discovery, whereas Bloomingdale's here urges dismissal on the pleadings. In view of this, Metro Kane's complaint cannot be dismissed on the basis of collateral estoppel.

The defendants urge a second ground to hold the Lanham Act claim insufficient as a matter of law. As explained by the Second Circuit, even if "use of the name has acquired secondary meaning, it could not prevent the use of that term by one whose use began before the secondary meaning was acquired." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir.1980). The *Rowoco* opinion established that no secondary meaning existed at the time of that determination and Bloomingdale's has presented evidence of juicer sales prior to June 24, 1985. The affidavit of Glen Senk, a divisional merchandise manager, establishes that Bloomingdale's has been advertising and selling the Rowoco juicer at least since the spring and summer of 1985, and sales by Bloomingdale's are conceded by Metro Kane.

Thus, it is Bloomingdale's position that Metro Kane is precluded on the basis of *Saratoga Vichy, supra,* from establishing its Lanham Act claim based on the existence of secondary meaning prior to the commencement of the allegedly infringing sales. Since neither Hanover House nor Brookstone has presented any evidence of sales before June 24, 1985, however, dismissal of the Lanham Act claim against them would be inappropriate on this basis.

■ However, Metro Kane has asserted that a colorable Lanham Act claim may be based on the theory that, where secondary meaning is "in the making" but not yet fully developed, a trademark or trade dress will be protected against intentional, deliberate attempts to capitalize on a distinctive product. While no previous case has apparently relied solely upon secondary meaning in the making to establish a Lanham Act violation, this court has demonstrated a nodding acquaintance with the concept. *See Loctite Corp. v. National Starch & Chemical*, 516 F.Supp. 190, 210 (S.D.N.Y.1981); *Orion Pictures Co. v. Dell Publishing Co.*, 471 F.Supp. 392, 396 (S.D.N.Y.1979); *Blake Publishing Co. v. O'Quinan Studios, Inc.*, 202 U.S.P.Q. 848 (S.D.N.Y.1979); *West & Co. v. Africa Institutes*, 194 U.S.P.Q. 32 (S.D.N.Y.1976); *Glamorene Products Corp. v. Boyle-Midway, Inc.*, 188 U.S.P.Q. 145 (S.D.N.Y.1975); *National Lampoon, Inc. v. American Broadcasting Cos., Inc.* 376 F.Supp. 733, 747 (S.D.N.Y.), *aff'd*, 497 F.2d 1343 (2d Cir. 1974).

There exists no controlling authority which holds that a Lanham Act claim based on secondary meaning in the making is without merit and some tacit support for the doctrine may be culled from the Second Circuit's terse *per curiam* affirmance of the Honorable Charles L. Brieant's opinion in the *National Lampoon* case which partially relied on the doctrine. There the court stated that "the judge justifiably found that the defendant ... had deliberately attempted to exploit National Lampoon's well-known name and reputation."

While secondary meaning in the making has received tacit approval, the doctrine is admittedly somewhat at odds with the affirmative requirement of secondary meaning found in the *Saragota Vichy Spring* opinion. *See also Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985); *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 747 F.2d 81, 90 (2d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1755, 84 L.Ed.2d 818 (1985). One distinguishing aspect is that *Saratoga Vichy Spring* considered the rights to the use of descriptive or geographical words and not, as is presented here, the right to a

product's trade dress. Since "secondary meaning was originally ... designed to limit the extent to which a manufacturer could monopolize words and symbols that are useful in describing products," *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 952 (2d Cir.1980), the requirement of secondary meaning is less important in "the realm of trade dress, because the possible varieties of advertising display and packaging are virtually endless." *Id.* at 953. While the *Perfect Fit* opinion was addressing the necessity of secondary meaning under New York State law, its reasoning has relevance to federal copyright principles as well.

 Secondary meaning in the making derives further support from the analogous "second comer" doctrine. This doctrine states that "[a] senior user in possession of a distinctive mark has a right not to have a second comer intentionally cause a likelihood of confusion between the two marks in an attempt to exploit the reputation of the senior user's mark, since this would deprive the first user of control over its reputation and goodwill." *Thompson Medical Co., supra,* 753 F.2d at 214. The dicta in *Thompson Medical Co.* suggests that the second comer doctrine has no independent significance apart from the typical *Polaroid* analysis of likelihood of confusion. *Id.* at 215. While it is true that "no single *Polaroid* factor is pre-eminent, nor can the presence or absence of one without analysis of the others, determine the outcome of an infringement suit," *id.* at 214, evidence of a highly distinctive mark of the senior user together with proof of bad faith by the junior user strongly buttresses a finding of infringement.[1] *See id.* at 218 & n. 16. *See also Tomy Corp. v. P.G. Conti-*

*nental, Inc.*, 534 F.Supp. 595, 598–99 (S.D. N.Y.1982) ("plaintiffs must establish ... either that defendants *intentionally copied* their product, hoping to profit from the market plaintiffs had created; or that the particular color scheme plaintiffs had created ... has achieved *secondary meaning*").

The conclusion reached here is that Metro Kane's Lanham Act claim of "secondary meaning in the making" presents a viable federal question. The case law does not foreclose Metro Kane's cause of action based on allegations that, by intentionally copying a product's highly distinctive trade dress, Bloomingdale's interfered with Metro Kane's attempt to develop secondary meaning. At least it is not possible to conclude that Metro Kane's federal cause of action against Bloomingdale's is "wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *see Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974).

The affidavit of Riki Kane ("Kane"), president of Metro Kane, provides some evidence to support Metro Kane's claim for relief under the doctrine of secondary meaning in the making. Kane asserts that during negotiation, in the spring of 1984, after prior purchases of the Mighty O-J by Bloomingdale's and sales to its customers, Senk, the houseware buyer for Bloomingdale's, warned her about the existence of identical but lower priced juicers from Taiwan and then proceeded to purchase the Taiwanese import from Rowoco in the fall of 1984. Kane further asserts that thereafter Bloomingdale's sold another copy of the Mighty OJ and in July, 1985 Bloomingdale's profited from the purchase and sale

---

1. The *Thompson Medical Co.* opinion concluded that protection of an unregistered descriptive term, as opposed to a suggestive term, could not be granted absent a finding of secondary meaning. 753 F.2d at 215–17. Unfortunately, the general analysis of trade dress infringement does not include a distinction between "descriptive" and "suggestive" types of designs, but rather focuses on the distinction between "functional" and "design" features. *See LeSportsac, Inc. v. K. Mart Corp.,* 754 F.2d 71, 75–78 (2d Cir.

1985). Given the state of flux in this area of the law it is possible that a highly distinctive design feature may be considered so "suggestive" that secondary meaning need not be proved. It is at least worth noting that none of the considerations for requiring secondary meaning which were emphasized in *Thompson Medical Co., supra,* 753 F.2d at 216, appear to be particularly important when evaluating the equity of protecting a product's unique trade dress.

of large quantities of the Rowoco juicer at distressed prices.

Bloomingdale's has countered Metro Kane's evidence of intentional and deliberate copying by noting that September 19, 1985 was the first occasion on which this court reached the finding that the Rowoco juicer was unlawfully competing with the Metro Kane juicer. Before that time, Bloomingdale's claims that it was proper to rely on this court's October 2, 1984 opinion holding that Metro Kane had no protectible interest in its juicer despite the decision of the Second Circuit on February 15, 1985 reversing and remanding the district court holding. Since Metro Kane has alleged wrongful activities falling outside of the period between October 2, 1984 and February 15, 1985, its Lanham Act claim is not foreclosed on the pleadings by Bloomingdale's claim of good faith which presents a factual issue.

■ Finally, Metro Kane's claim that Bloomingdale's has infringed upon its secondary meaning in the making is not subject to dismissal on the basis of collateral estoppel. One of the elements of such a claim is the intent of the defendant to capitalize on the distinctive quality of the plaintiff's mark. *See National Lampoon, supra,* 376 F.Supp. at 747. The question of Bloomingdale's intent was never an issue in the *Rowoco* litigation and no discovery, or findings were provided. Therefore, Metro Kane has properly stated its federal cause of action.

## 2. Preliminary injunctive relief

In the Second Circuit, a party seeking injunctive relief must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

■ Metro Kane has adequately demonstrated the likelihood of irreparable harm with regard to the actions of defendant Brookstone. As described in the *Rowoco* opinion, Metro Kane is predominantly a single product company and thus relies heavily on sales of the Mighty OJ juicer for its profitability. Infringing sales during the Christmas shopping season could seriously threaten the company's business.

■ A preliminary examination of the allegedly infringing juicers reveals that the juicers sold by Brookstone are virtually identical in appearance to the Mighty OJ juicer. While Brookstone has asserted that its distinctive store name, appearance, and display of boxes, eliminate any likelihood of confusion, this assertion does not significantly alter the present assessment of Metro Kane's likelihood of success. As explained in the *Rowoco* opinion, such labelling may be ineffective when a small distinctive item is casually considered by prospective consumers. Opinion at 5.

■ With regard to defendants Bloomingdale's and Hanover House, there has been no demonstration of irreparable injury. Metro Kane and Hanover House have agreed to a preliminary injunction upon consent, which was to become effective only if this court has subject matter jurisdiction over the claim. Having made that affirmative determination, the court will approve the stipulation between Metro Kane and Hanover House. Bloomingdale's has stated in the affidavit of Glen Senk that it has voluntarily withdrawn all Rowoco juicers from its stores and that the store will fill any future orders from catalogs by purchasing Metro Kane's juicer at its regular wholesale price. Therefore, Metro Kane will not be harmed pending the resolution of this case. Since irreparable injury is an essential element of a motion for preliminary injunctive relief, no injunction will issue against Hanover House and Bloomingdale's.

Further, the reasoning already set forth establishes the existence of a substantial question with respect to the federal claim,

and the earlier opinion of this court has established the state claims under New York law and the mold statutes, thus meeting the second prong of the *Jackson Dairy* test.

The motion for a preliminary injunction against Brookstone will be granted and denied as to Hanover House and Bloomingdale's. Submit order on notice.

IT IS SO ORDERED.