| | ☐ Execution(s) Issued (see reverse)<br>☐ Foreign Judgment (see reverse: | | | ☐ Satisfaction, Full or Partial Filed (see reverse)<br>☐ Release of Certain Real Estate Filed (see reverse) |
|---|---|---|---|---|
| **JUDGMENT DEBTOR (Name & Address)**<br>► Schiessle, Michael; 805 Northwest Highway,<br> Parkridge, Illinois;<br>► *Lommen D. Eley; 127 North Deerborn Street,<br> Suite 631; Chicago, Illinois and<br> **John P. Koch; 127 North Deerborn Street, *** | | | | **JUDGMENT CREDITOR (Name & Address)**<br>Village of Williams Bay<br>P.O. Box 580,<br>Williams Bay, Walworth County, Wisconsin |
| Occupation Schiessle: engaged in the profession,<br>Koch engaged in the practice of law | | | | Occupation engages in the operation of said<br>village under Wisconsin Law |
| **Case Number**<br> 85 CV 708 | | | | **Attorney of Creditor** Richard R. Grant of Consigny,<br>Andrews, Hemming & Grant, S.C.,Janesville, WI |
| **Date of Judgment**<br> 6/25/86 | **Date Docketed**<br> 6/25/86 | **Time Docketed**<br> 4:00 p.m. | | **Other Judgment Debtors** |
| **Judgment Amount** | **Costs** | **Total Costs & Judgment**<br> $629.42 | | **Remarks** ***Suite 631; Chicago, Illinois<br>Judgment docketed in 3 places |

The NUTRASWEET COMPANY,
Plaintiff–Appellant,

v.

The STADT CORP. and Cumberland
Packing Corp.,
Defendants–Appellees.

Nos. 89–2528, 89–3097.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1990.

Decided Nov. 8, 1990.

Stephen P. Durchslag, Winston & Strawn, Henry L. Mason, III, Sidley & Austin, Stanley J. Adelman, Mark I. Feldman, Gary M. Sircus, David G. Lynch, Rudnick & Wolfe, Chicago, Ill., Gwenda M. Burkhardt, Deerfield, Ill., for plaintiff-appellant.

Martin G. Raskin, Steinberg & Raskin, New York City, Henry S. Kaplan, Marshall W. Sutker, Dressler, Goldsmith, Shore, Sutker & Milnamow, Chicago, Ill., for defendants-appellees.

Before COFFEY and RIPPLE, Circuit Judges, and REYNOLDS, Senior District Judge.*

REYNOLDS, Senior District Judge.

This is an action for trade-dress infringement and unfair competition to enjoin defendants-appellees Stadt Corporation ("Stadt") and Cumberland Packing Corporation ("Cumberland") from packaging their sugar substitute, "Sweet One," in a blue packet. The plaintiff-appellant NutraSweet Company ("NutraSweet") appeals the district court's denial of its motion for a preliminary injunction and the district court's grant of summary judgment in favor of Stadt and Cumberland.[1] The issue for this court to decide is whether color can be a trademark. The district court said no. We affirm.

I

BACKGROUND

A. Facts

The parties each manufacture and distribute sugar substitute products in single-serving-size colored packets which are offered to consumers in restaurants and other food service establishments. Cumberland is a New York corporation whose predecessor in interest was a family business headed by Benjamin Eisenstadt (Cumberland's predecessor in interest will also be referred to as "Cumberland"). In 1948, Benjamin Eisenstadt changed the nature of the business of Cumberland from a cafeteria to a packaging company based upon the concept of packaging granulated refined sugar ("sugar") in small single-serving-size white packets or envelopes. Since 1948, sugar has been packaged and sold by refiners and packers in single-serving-size white paper packets. The use of white paper for sugar packets is, and has been since their introduction in about 1948, a widespread and customary practice in the sugar industry.[2] Since their introduction, sugar packets made of white paper have been made available to patrons of food service establishments, such as restaurants, in bowls or caddies provided on restaurant tables and counters. From 1948 to 1958, the white sugar packets were the only sweetener packets available in such bowls or caddies.

In 1958, Cumberland began to manufacture and sell granulated low calorie sugar substitute for tabletop use in single-serving-size pink paper packets under the brand name "Sweet 'N Low." "Sweet 'N Low" sugar substitute was the first granulated sugar substitute to be packaged in such packets. "Sweet 'N Low" began appearing in restaurants, hotels, and other food service outlets in 1958 alongside the sugar packets in the same bowls or caddies. "Sweet 'N Low" packets were packaged in pink paper to distinguish them from sugar packets made of white paper.

After "Sweet 'N Low" was introduced in its pink packet, producers began and are

* The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. The district court granted summary judgment on Counts I, III, IV, and V of the complaint. Count II, which is for deceptive advertising under the Lanham Act, remains to be litigated.

2. NutraSweet points out that Cumberland markets a sugar product, "Sugar in the Raw", in a brown packet. That does not mean that the use of white packets for sugar is not widespread and customary, nor does it constitute a material factual dispute that would preclude the grant of summary judgment.

now packaging their respective brands of granulated sugar substitute in packets made of colored paper. In 1981, Nutra-Sweet introduced "Equal," a sugar substitute, in packets made of white paper. These white packets resembled many of the single-serving-size packets used by competitors to package sugar; therefore, in 1982, NutraSweet decided to distinguish the appearance of its "Equal" packets by using a blue background.[3]

In 1988, Cumberland and Stadt introduced a new sugar substitute called "Sweet One" in single-serving-size packets. "Sweet One" is packaged in a blue packet. NutraSweet does not contend that the color of the "Sweet One" packet is the same shade of blue as the "Equal" packet, and a review of the packets reveals that they are not the same shade of blue. NutraSweet does contend, however, that "Sweet One" is packaged in confusingly similar pastel blue packets. NutraSweet challenges appellees' use of blue packets as an infringing trade dress under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Illinois Consumer Fraud and Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 311, *et seq.*, and the Illinois Anti–Dilution Act, Ill.Rev.Stat. ch. 140, ¶ 22. (Brief of Plaintiff–Appellant, 89–2528, p. 1).

## B. Procedural History

NutraSweet commenced this action for a preliminary and permanent injunction on February 17, 1989. Cumberland and Stadt answered the complaint and filed a counterclaim. Cumberland and Stadt then moved for summary judgment seeking dismissal of NutraSweet's trade-dress infringement,

unfair competition, deceptive trade practices, and dilution claims (Counts I, III, IV and V). NutraSweet opposed the motion.

NutraSweet then filed a motion for a preliminary injunction and a motion to set an evidentiary hearing on the motion for a preliminary injunction. The district court denied NutraSweet's motion for an evidentiary hearing on the motion for a preliminary injunction and denied NutraSweet's motion for a preliminary injunction based upon the affidavits and other evidence offered in support of and in opposition to the motion for summary judgment but did not rule on the summary judgment motion. NutraSweet filed a notice of appeal from that order (Appeal No. 89–2528). Later, on September 25, 1989, the district court granted the summary judgment motion and NutraSweet filed its notice of appeal from that order (Appeal No. 89–3097). On October 4, 1989, the district court certified its ruling on the motion for summary judgment, *nunc pro tunc* for September 25, 1989, as a final order under 54(b) of the Federal Rules of Civil Procedure and this court consolidated the two appeals for purposes of disposition.[4]

## II

### ANALYSIS

A grant of summary judgment is reviewed *de novo.*[5] *Brock v. American Postal Workers Union, Chicago Local,* 815 F.2d 466, 469 (7th Cir.1987). The fundamental issue for this court to decide is

---

**3.** Complaint, ¶ 13. In addition to the blue and pink packets of "Equal" and "Sweet 'N Low" respectively, Alberto–Culver Company's "Sugar Twin" sugar substitute is packaged in yellow packets. The parties dispute whether there are any other competitors in the tabletop sweetener market which seems to be defined as restaurants, hotels, and other food service establishments. NutraSweet asserts that there is no evidence that there are more than three competitors in the tabletop sweetener market. Cumberland and Stadt assert that there are several producers of sugar substitute products in pink packets, although they only identify one of them, Weight Watchers "Sweet'ner" sugar substitute, as being offered in the tabletop sweeten-

er market. This factual dispute is not material to the court's decision.

**4.** As noted in footnote 1, the district court's grant of summary judgment did not dispose of the entire case.

**5.** The court will affirm the district court's opinion based on a finding that, as a matter of law, color is not subject to trademark protection. Our affirmance of the district court's decision on the summary judgment motion moots the appeal of the denial of the motion for a preliminary injunction.

whether mere color [6] should ever be accorded trade-dress protection under Section 43(a) of the Lanham Act.[7] 15 U.S.C. § 1051 *et seq.* The seminal case in this circuit is *Life Savers v. Curtiss Candy Co.,* 182 F.2d 4, 9 (7th Cir.1950). In *Life Savers,* this court stated that:

> As a rule color cannot be monopolized to distinguish a product. *Diamond Match Co. v. Saginaw Match Co.,* 6 Cir., 142 F. 727, 729, certiorari denied 203 U.S. 589, 27 S.Ct. 776, 51 L.Ed. 330. Color is not subject to trade-mark monopoly except in connection with some definite arbitrary symbol or design. *James Heddon's Sons v. Millsite Steel & Wire Works, Inc.,* 6 Cir., 128 F.2d 6, 9.

This court believes that that should continue to be the law in this circuit.

NutraSweet urges this court to adopt the position of the United States Court of Appeals, Federal Circuit, which has declined to establish a *per se* prohibition against registering colors as trademarks. *In re Owens–Corning Fiberglas Corp.,* 774 F.2d 1116, 1120 (Fed.Cir.1985). Confronted with an unusual set of facts, the court in *Owens–Corning* established a limited rule that in certain situations a particular color could itself be registered as a trademark. *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1382 (9th Cir.1987). Using a two-step analysis, the Federal Circuit court determined first that there was no competitive need in the insulation industry for the color pink to remain available to all insulation producers and, second, that pink insulation, had acquired a secondary meaning. *Id.*

Judge Jean Galloway Bissel dissented and proposed adherence to the traditional rule that the overall color of a product cannot be a trade identity designation, nor is it entitled to registration. *Owens–Corning,* 774 F.2d at 1128 (Bissel dissenting). This court finds Judge Bissel's reasoning persuasive, and especially so in this circuit for the following reasons:

First, lawyers have advised clients, clients have conducted their affairs, and litigants have won, lost, and settled, all based upon the prevailing law in this circuit. Consistency and predictability of the law are compelling reasons for not lightly setting aside a settled principle of law.

■ Second, there is no need to change the law. This court's interpretation of the Lanham Act adequately protects the use of color as an element of a trademark. Although color alone cannot be protected as a trademark, it may be protected if it is used in connection with some symbol or design or impressed in a particular design, as a circle, square, triangle, a cross, or a star. *Barbasol Co. v. Jacobs,* 160 F.2d 336, 338 (7th Cir.1947).

The third reason for the general rule that defines the appropriation of a particular color is that infringement actions could soon degenerate into questions of shade confusion. *Owens–Corning,* 774 F.2d at 1131 (Bissel dissenting). The case before the court provides a vivid example of the problems with shade confusion. NutraSweet does not contend that the color blue of the "Sweet One" packet is identical to the color blue of the "Equal" packet, but rather, based upon market research, that the shades of blue are confusingly similar. How different do the colors have to be? Under NutraSweet's proposed test, the only way to answer that question is through litigation.

---

6. NutraSweet is attempting to appropriate a mere color, i.e. a color unconfined by any design, sometimes referred to as a color, *per se,* or color "alone." NutraSweet's action for trade-dress infringement does not include any logos, designs or other markings on its "Equal" packets.

7. A product's trade dress is the overall image used to present it to purchasers; it could include, to give a partial list, the product's size, shape, color, graphics, packaging, and label.

*Vaughan Mfg. Co. v. Brikam Int'l, Inc.,* 814 F.2d 346, 348 n. 2 (7th Cir.1987). The parties have used the terms trademark and trade dress interchangeably, and this court has indicated that there is probably no substantive legal difference between these terms. *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 608 (7th Cir. 1986). Courts deciding trade-dress cases cite freely from trademark cases, and vice versa. *Vaughan,* 814 F.2d at 348 n. 2.

Lastly, changing the law based on the facts in this case might create a barrier to otherwise lawful competition in the tabletop sweetener market. NutraSweet contends that the accepted market understanding is that pastel blue means "Equal," pink means "Sweet 'N Low," and yellow means "Sugar Twin." NutraSweet argues that "[t]hat which is confusingly similar to Equal's blue packet would not likely cover the whole spectrum of blue, although that is certainly a question of fact to be determined after evidence as to what is confusingly similar." (NutraSweet reply brief Appeal No. 89–2528, p. 2). NutraSweet urges this court to adopt a fact-driven standard which would require the trial court to scrutinize the tabletop sweetener market to determine the number of competitors and the likelihood of future competitors in that market to determine whether there is a competitive need for the color blue to remain available. Such a standard would prove unworkable, for there is no way for a court to predict the likelihood of future competitors in a particular market.

It is likely, however, that if each of the competitors presently in the tabletop sweetener market were permitted to appropriate a particular color for its product, new entrants would be deterred from entering the market. The essential purpose of trademark law is to prevent confusion, not to bar new entrants into the market. *Owens–Corning*, 774 F.2d at 1130. This does not mean that NutraSweet is without protection if a competitor tries to pass off its goods as those of NutraSweet. NutraSweet's overall trade-dress may be protected; but, it may not protect the mere color of its packet.

For the reasons stated, the trial court's granting of the motion for summary judgment is affirmed, and the appeal of the

denial of the motion for a preliminary injunction is denied as moot.