**MASTER DISTRIBUTORS, INC., a New Hampshire corporation, Plaintiff,**

v.

**PAKO CORPORATION, a Delaware corporation and Pakor, Inc., a Minnesota corporation, Defendants.**

No. Civ. 4–91–507.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 12, 1991.

Donald W. Niles, Edward F. Fox, Jonathan C. Miesen, Doherty, Rumble & Butler, St. Paul, Minn., for plaintiff.

David R. Fairbairn, Thomas J. Stueber, Kinney & Lange, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants' motion for partial summary judgment. The motion will be granted.

### FACTS

Plaintiff Master Distributors, Inc. (MDI) manufactures and sells leader splicing tape under the trademark "Blue Max." Leader splicing tape is a product used by minilabs in processing photographic film. The tape is used to attach undeveloped film to leader cards. The leader cards with the film attached are then fed through minilab photoprocessing machines, which develop the film, make negatives and print the photographs.

Blue Max was developed by Charles Dolan, the president of MDI, in response to the need in the minilab industry for a tape suited for use in minilab photoprocessing machines. Pl.'s Mem. in Opp. to Summ. J., Aff. of Charles Dolan ¶ 5. The dye that colors the tape is mixed into the adhesive, which is then applied to a transparent plastic film; thus, the tape can be made in any color, and the color of the tape does not affect its function. Dolan Aff. ¶ 12.

On July 13, 1984, MDI filed its trademark for Blue Max; the trademark incorporates the color blue. Dolan Aff. ¶ 5 and Ex. 1. MDI does not claim a registered trademark in the color blue by itself; however, Blue Max tape is blue in color and MDI emphasizes the blue color in marketing the tape. Distributors and consumers of leader splicing tape often order Blue Max by asking for "the blue tape," or simply for "blue." Pl.'s Mem. in Opp. to Summ. J., Dolan Aff. ¶ 8, Aff. of Dennis Liddell ¶ 6, Aff. of Jerry Vaniman ¶ 6; Aff. of Eve Dolan ¶ 5, Aff. of Nando Mastrodicasa ¶ 5. Blue Max tape is well-known and enjoys a reputation as the industry standard. *See* Dolan Aff. ¶ 6, Liddell Aff. ¶ 5, Vaniman Aff. ¶ 4, Eve Dolan Aff. ¶ 4; Defs.' Mem. in Supp. of Summ. J., Aff. of Thomas J. Nicoski, Ex. 1. However, Blue Max has substantial competition in the marketplace. Leader splicing tape is available in numerous colors from various manufacturers; in addition to Blue Max, there are at least nine different brands of blue leader tape on the market. Nicoski Aff. ¶ 11, 12 and Ex. 3–15.

Defendant Pakor, Inc. (Pakor) is a wholly-owned subsidiary of defendant Pako Corp. Pakor is a distributor of photographic supplies, including leader splicing tape. From April 1989 to sometime in 1991, Pakor was one of MDI's distributors and had a nonexclusive right to sell Blue Max in the Midwest. Dolan Aff. ¶ 10. In January of 1991, Pakor began selling its own brand of leader splicing tape; the tape is blue in color and is sold under the trademark "Pakor Blue." Nicoski Aff. ¶ 10. Initially, Pakor's tape did not have an identifying label directly printed on its cardboard core. Dolan Aff. ¶ 10. Now, however, the core bears the label "Pakor Blue" and displays Pakor's toll-free telephone number. Nicoski Aff. ¶ 10.

In February 1991, MDI learned about Pakor's blue leader splicing tape and became concerned that Pakor's product would be sold to customers who asked for "blue tape," or that customers would assume that Pakor Blue was an authorized private label brand of Blue Max. MDI therefore filed this suit, alleging infringement of its registered trademark, infringement of its common law trademark in the color blue, illegal "palming off," unfair competition, dilution of trademark, deceptive trade practices, false statements in advertising, and unlawful trade practices.

Defendants have moved for partial summary judgment on plaintiff's claims insofar as they allege causes of action based upon common law trademark rights in the color blue. As the Court reads the complaint, however, only two counts assert trademark rights in the single color blue: Count II, alleging infringement of MDI's common law trademark in the color blue as used in leader splicing tape, and Count V, alleging "dilution of MDI's marks." Compl. ¶ 18, 21. Therefore, the Court will treat defendants' motion as moving for summary judgment on Count II in its entirety and for summary judgment on Count V insofar as it claims dilution of a common law trademark in the color blue.

DISCUSSION

A movant is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of a court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine factual conflict exists. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the nonmov-ing party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *AgriStor Leasing*, 826 F.2d at 734. When a motion for summary judgment is properly made and supported with affidavits or other evidence as provided in Fed.R.Civ.P. 56(c), then the nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Moreover, summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Defendants base their motion for partial summary judgment on the assertion that, as a matter of law, plaintiff cannot assert trademark rights in the color blue and thereby preclude competitors from making blue leader splicing tape. Plaintiff opposes summary judgment on the ground that a color mark is no different from any other mark, and that under the common law of trademarks MDI can claim trademark rights in the color blue if the color has become so associated with MDI's leader splicing tape that the color has acquired a secondary meaning. Plaintiff asserts that whether MDI has attained a common law trademark in the color blue under the doctrine of secondary meaning is a genuine issue of material fact precluding summary judgment.

Prior to 1985, the settled law was that although color could be protected as an essential element of a trademark or trade dress, a single color alone could not be appropriated as a trademark. Thus, the use of color could be protected as part of an arrangement of colors, symbols or words, but a seller could not feature a particular color and prohibit others in the

trade from using that color.[1]  1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 7:16 at 213 (2d ed. 1984) (citations omitted).  In 1985, however, the United States Court of Appeals for the Federal Circuit held that an insulation manufacturer could register a trademark in the single, overall color of a product.  *In re Owens–Corning Fiberglas Corp.*, 774 F.2d 1116 (Fed.Cir.1985).

In *Owens–Corning*, a manufacturer attempted to register the color pink as a trademark for residential insulation.  The registration was denied, and the Trademark Trial and Appeal Board affirmed the denial on the ground that the manufacturer had not demonstrated that the color pink was distinctive of its goods.  The manufacturer appealed the board's decision to the Federal Circuit, which reversed the board's decision.  The court held that the manufacturer had demonstrated that pink had obtained a secondary meaning as a mark identifying its goods.  In reaching this result, the court also specifically rejected the traditional rule that trademark rights could not be claimed in a single color.

The court noted that the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the Lanham Act), liberalized the federal law of trademarks, defining as a trademark "any word, name, symbol, or device ... adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."  *Owens–Corning*, 774 F.2d at 1119 (*quoting* 15 U.S.C. § 1127).  The court observed that in accordance with this definition and the policy of liberality, trademark registration gradually "became available to many types of previously excluded indicia," such as containers, product configurations, slogans and sounds.  *Id.* at 1119.

Because trademark protection had already been afforded to combinations of colors and to combinations of color and design, the court saw no impediment to extending trademark registration to a single color, provided that the statutory requirements for registration had been met.  In reaching this conclusion, the court brushed aside two traditional rationales for precluding trademark protection for single colors.  The first rationale dismissed by the *Owens–Corning* court was the color depletion theory, which holds that because there are a limited number of colors in the palette, allowing manufacturers to monopolize certain colors would hinder competition.  While the court did not reject this theory for "appropriate application," it reasoned that applying the theory as a per se prohibition conflicted with the "liberating purposes" of the Lanham Act.  *Id.* at 1120.

The second traditional rationale dismissed by the *Owens–Corning* court was the shade confusion theory, which holds that extending trademark protection to a single color would require trademark registration officials and courts deciding trademark infringement claims to scrutinize minute variations in color to determine whether allegedly infringing shades would likely confuse consumers as to a product's source.  In rejecting this rationale, the court reasoned that "[d]eciding likelihood of confusion among color shades ... is no more difficult or subtle than deciding likelihood of confusion where word marks are involved."  *Id.* at 1123 (*quoting In re Owens–Corning Fiberglas Corp.*, 221 U.S.P.Q. 1195, 1198 (TTAB 1984)).

The dissent in *Owens–Corning* argued strongly that the majority's departure from the traditional rule against mere color trademarks was in error.  *Owens–Corning*, 774 F.2d at 1128–31 (Bissel, J., dissenting).  The dissent first noted that only the question of secondary meaning was properly before the court, and that whether color per se could be registered, therefore, remained an open issue.  In addition, the dissent observed that the bar on mere color trademarks was the law before the Lanham Act was adopted and had been recognized by all regional circuits that had confronted the issue after the Act; the dissent saw no reason to grant a registration that

---

**1.** Under this rule, there is no question that plaintiff may claim a trademark in the color   blue as an element of its registered trademark.

would not be recognized in infringement actions in the regional circuits. The dissent then gave several additional reasons for adhering to the traditional rule.

First, the dissent argued that the majority's decision failed to respect the unanimous precedent of the regional circuits. Second, the majority's rule disrupted consistency and predictability in trademark law; the dissent observed that "[l]awyers have advised clients, clients have conducted their affairs, litigants have won and lost and settled, all in light of the interpretation universally applied in the federal courts." *Id.* at 1129. Third, the traditional view adequately protected the use of color as an element of a trademark. Fourth, changing the traditional rule could create barriers to otherwise lawful competition; for example, if pink insulation had become virtually synonymous with residential insulation, new market entrants prevented from making pink insulation could be precluded from competing effectively. The property protected by trademarks, however, "is the right to prevent confusion, not to bar new entrants into the market." *Id.* at 1130. The dissent argued that a manufacturer could protect its right to prevent confusion by labeling its product, or by invoking the law of unfair competition to prevent others from palming off their products as the manufacturer's. Finally, the dissent argued that under the majority's rule, infringement actions would degenerate into questions of shade confusion.

Predictably, plaintiff urges the Court to adopt the *Owens–Corning* majority's position, and defendants urge the Court to adopt the dissent's position. The United States Court of Appeals for the Eighth Circuit has never addressed the issue of mere color trademarks. Both parties, however, rely on *Deere & Co. v. Farmhand, Inc.*, 560 F.Supp. 85 (S.D.Iowa 1982), *aff'd*, 721 F.2d 253 (8th Cir.1983) to argue that the Eighth Circuit would adopt their view of *Owens–Corning*. In *Deere & Co.*, a farm machinery manufacturer brought an action against a competitor under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and the common law of unfair competition. The manufacturer sought to enjoin a competitor from selling two models of front-end loaders patterned after the plaintiff's models and painted "John Deere green." The court held in favor of the defendant, and the Eighth Circuit, in a brief per curiam opinion, affirmed. The Eighth Circuit did not detail its reasons for affirming the lower court's holding, saying only that it found no merit in the arguments for reversal.

Defendants assert that in *Deere & Co.*, the lower court adopted a per se rule that color alone cannot serve as a trademark, and that the Eighth Circuit's affirmance signifies its acceptance of the traditional view. Plaintiff asserts that the lower court did not adopt a per se bar against mere color trademarks; plaintiff goes on to state, without any evidence, that a per se bar was "obviously" urged at the appellate level and that the Eighth Circuit declined the opportunity to adopt a per se rule. Both parties' characterizations of *Deere & Co.* are incorrect.

The district court in *Deere & Co.* discussed the issue of mere color trademarks in the context of the defendant's argument that its use of John Deere green was lawful under the functionality doctrine, which holds that trademark protection does not extend to features that are "functional." The definition of "functional" has been extended to exempt from protection features that are "aesthetically functional"; that is, features that, because of consumers' aesthetic expectations, must be copied in order for manufacturers to compete in the marketplace. *Deere & Co.*, 560 F.Supp. at 97.

The *Deere & Co.* plaintiff argued that John Deere green was nonfunctional, and therefore was entitled to protection; the defendant argued that the color was not entitled to protection, because consumers wanted their front-end loaders to match their tractors, which were invariably painted John Deere green. In resolving the issue, the court first noted that "[w]hether the color John Deere green alone is capable of protection under [the unfair competition provisions of the Lanham Act] presents an interesting question." *Id.* at 96. The court then cited the general rule that "col-

or, per se, is not capable of appropriation as a trademark." *Id.* at 96 (*quoting* 1 McCarthy, *supra*, § 7:16). The court determined, however, that even if color alone were capable of protection, John Deere green was aesthetically functional and therefore not subject to trademark protection. Thus, the court expressly did not reach the issue of whether color alone was capable of trademark protection.

Moreover, both plaintiff and defendants ignore the fact that the *Deere & Co.* plaintiff did not rely solely on color to make out its claim of unfair competition. Indeed, while the original complaint alleged that the defendant's use of John Deere green by itself violated the Lanham Act, the plaintiff subsequently amended its complaint to allege that the combination of the defendant's use of John Deere green, the overall configuration of the machinery, and the defendant's advertising program constituted unfair competition. *Deere & Co.*, 560 F.Supp. at 88 n. 1 and 95. Thus, the case did not present the issue of whether color alone could serve as a trademark, and the Eighth Circuit's affirmance supports neither plaintiff's nor defendants' position.

As defendants note, the *Owens–Corning* majority's view has not found favor with the few regional circuits that have addressed the issue. Relying on the reasoning of the *Owens–Corning* dissent, the United States Court of Appeals for the Seventh Circuit has explicitly rejected the *Owens–Corning* rule in favor of the traditional ban on mere color trademarks; the court held that a low-calorie sweetener manufacturer could not preclude competitors from putting their product in blue packets. *Nutrasweet Co. v. Stadt Corp.*, 917 F.2d 1024, 1027 (7th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 1640, 113

L.Ed.2d 735 (1991). The United States Court of Appeals for the Eleventh Circuit has declined to address the issue, holding that, even if it were to adopt the *Owens–Corning* rule, an ice cream bar manufacturer could not protect its use of the color blue in its foil wrapper, because it had failed to establish secondary meaning. *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1548 (11th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). In a case where the plaintiff asserted trademark rights in a yellow motor oil bottle, the United States Court of Appeals for the Ninth Circuit recognized the *Owens–Corning* rule, but limited it to its facts, stating that except for "extraordinary situations ... the general rule remains that an element of distinctiveness of shape in combination with the color [must exist] before a trademark will be granted." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1382 (9th Cir.1987).

The Court is persuaded by the reasoning of the *Owens–Corning* dissent, and therefore will follow the Seventh Circuit in adhering to the traditional view that MDI may not claim trademark rights in the color blue, as applied to leader splicing tape. The case at bar aptly illustrates how the *Owens–Corning* rule could hinder competition in the marketplace. Leader splicing tape is currently available in green, red, blue, yellow, black, silver, orange and purple.[2] Plaintiff argues that defendants could simply select another shade of color or make their tape clear. There are two problems with this solution. First, plaintiff has not limited itself to any particular shade of blue; in its complaint, plaintiff asserts common law trademark rights in the color "blue," apparently attempting to appropriate all shades of blue for its own

---

2. The fact that leader splicing tape is currently available in a rainbow of colors distinguishes this case from *Owens–Corning*. The *Owens–Corning* plaintiff was apparently the only manufacturer making colored insulation; other manufacturers were leaving their insulation its natural color. Thus, depletion of all available colors was remote. In this case, however, the depletion of all colors is not remote, given the number of colors that have already been appropriated. Indeed, if defendants were to change the

color of their tape from blue, they would run the risk of an infringement action by another competitor. Therefore, even if the Court followed the *Owens–Corning* majority in rejecting a per se bar on mere color trademarks, it would conclude that defendants were entitled to partial summary judgment under the color depletion theory. *See Owens–Corning*, 774 F.2d at 1120 (the color depletion theory "is not faulted for appropriate application").

use. Even if plaintiff were to limit itself to a particular shade of blue, it is unclear how far from that shade defendants would have to deviate in order to sell a blue leader splicing tape that would not infringe. Second, as defendants point out, if plaintiff can appropriate blue, then other competitors will appropriate other colors. Perhaps defendants could find an unused color or make their tape clear; that, however, would eliminate another shade from those available to new entrants into the market. Eventually, there would be no room for new competitors in the leader splicing tape market, merely because existing manufacturers hold trademarks in the available colors.

In addition, even without trademark protection for the color blue by itself, plaintiff can protect its use of the color as an element of trade dress under the law of unfair competition. Section 1125 of the Lanham Act protects against false advertising and infringement of unregistered marks, names and trade dress. 2 McCarthy, *supra*, § 27:2 at 344 (2d ed. 1984). Thus, even if defendants have not infringed upon plaintiff's trademark, they may be liable under section 1125 if the total impression of their product, including its color, will confuse consumers as to its source. 1 McCarthy, *supra*, § 8:1 at 282. In fact, this was precisely the posture in which the district court considered the issue of color in *Deere & Co.;* as noted above, the claim in that case was that the combination of color, product configuration and marketing strategy constituted unfair competition under section 1125. Because the Court concludes that the *Owens–Corning* rule could hinder competition in the marketplace, and because sellers can protect themselves against unfair competition without monopolizing individual colors, the Court holds that, as a matter of law, plaintiff may not assert trademark rights in the color blue.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. defendants' motion for summary judgment on Count II is granted; and

2. defendants' motion for summary judgment on Count V is granted insofar as it alleges dilution of a common law trademark in the single color blue.