**POLARIS POOL SYSTEMS, INC., Plaintiff,**

v.

**LETRO PRODUCTS, INC., Defendant.**

**No. CV–94–7747 JMI (Bx).**

United States District Court, C.D. California.

Feb. 1, 1995.

Order Denying Plaintiff's Motion for Reconsideration March 28, 1995.

---

John E. Kelly, Janine R. Novatt, and Stuart O. Lowry, Kelly Bauerfeld & Lowry, Woodland Hills, CA, for Polaris Pool Systems Inc.

Gary A. Clark, Pretty Schroeder Brueggeman & Clark, Los Angeles, CA, for Letro Products Inc.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

IDEMAN, District Judge.

**IT IS HEREBY ORDERED:**

Plaintiff POLARIS POOL SYSTEMS, INC.'s (hereinafter "Polaris") Motion for Preliminary Injunction came before this Court for review on January 30, 1995. After careful consideration, the Court hereby DENIES plaintiff's motion.

### BACKGROUND

Plaintiff Polaris has sued defendant LETRO PRODUCTS, INC. (hereinafter "Letro") under federal law for infringement of trademark registration, false designation of origin, and false representation, and under California law for trademark/trade dress infringement, unfair competition, and an accounting. The claims arise from the alleged similarities between Polaris' "legendary" pool cleaner, the Model 180, and Letro's new "Legend" pool cleaner, which has appeared in trade shows but has yet to appear on the market. Polaris alleges similarities in the products' configurations and blue and white color schemes. The Model 180 is no longer manufactured.

In December 1994, Polaris applied to this Court for a temporary restraining order. The Court denied Polaris' application and calendared this motion for preliminary injunction for January 30, 1995. *See* Order Re: Plaintiff's Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction, entered December 20, 1994. Plaintiff now moves for a preliminary injunction to enjoin defendant's alleged trademark infringement.

## DISCUSSION

### I. Preliminary Injunction

In order for a preliminary injunction to issue, the plaintiff must show *either* (A) "a likelihood of success on the merits and the possibility of irreparable injury" *or* (B) "that serious questions going to the merits[1] were raised and the balance of hardships tips sharply in its favor." *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1174 (9th Cir.1989).

### II. Likelihood of Success on the Merits

■ Polaris cannot satisfy this prong of the test. A cause of action for trademark infringement requires a finding that the trademark or trade dress[2] "(1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused with [plaintiff's] products by members of the consuming public." *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir.1993). The third element is the "core element of trademark infringement." *Id.* at 825 (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir.1992).

#### A. Functionality

##### 1. Trademark Registration

Polaris contends that its trademark registration establishes the element of nonfunctionality. "A certificate of registration is prima facie evidence of the validity of the mark and relieves the holder ... of the burden of proving nonfunctionality and secondary meaning...." *Qualitex Co. v. Jacobson Products Co., Inc.*, 13 F.3d 1297, 1301 (9th Cir.1994).

Polaris provides evidence of a 1992 trademark register (# 1,725,031) for the Model 180 that includes a picture of the product and describes it as a "configuration of pool clean-

er in conjunction with blue and white color." *See* Declaration of Stuart O. Lowry, Esq. in Support of Plaintiff's Application for Temporary Restraining Order-and-Motion for Preliminary Injunction (hereinafter "Lowry Declaration"), Exh. B, p. 2.

Letro contends that the trademark registration is invalid because when Polaris applied for the registration, it did not disclose the existence of Model 180 patents or mention the frequency of blue and white color schemes in the pool product industry. According to Letro, these factors could have led the Trademark Office to deny registration. Letro also points out that even if the registration is valid, it may only cover the color scheme and that portion of the configuration depicted in the registration.

There is not enough evidence at this time to properly resolve these contentions. Therefore, for the sake of argument, the Court will not rely on the registration to satisfy the first two elements.

##### 2. Other Evidence of Nonfunctionality

■ Aside from the registration, Letro maintains that the Model 180's product configuration and color scheme are functional. "A trademark or trade dress is functional if it is essential to the product's use or purpose or if it affects the costs or quality of the article." *Jensen*, 4 F.3d at 823.

According to Letro, because the configuration of the Model 180 was contained in patents, the configuration is functional. Moreover, the wide use of blue and white colors in the pool product industry, as well as the use of white on the pool cleaner's wheels to prevent the pool cleaner from marking up the bottom of the pool floor, suggest that the color scheme is functional as well.

Polaris appears to concede that the color scheme is functional, but it denies that the

---

1. Serious questions going to the merits of an issue are those questions "which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir.1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir.1988)).

2. Trade dress has been defined as a product's "overall image as it is presented to the consumer and includes aspects such as the size, shape, color, or design of the product." *Qualitex Co. v. Jacobson Products Co., Inc.*, 13 F.3d 1297, 1303 (9th Cir.1994).

configuration of the product is functional. In determining functionality, courts consider "the existence of an expired utility patent disclosing the utilitarian advantage of the design sought to be protected as a trademark; the extent of advertising touting the utilitarian advantages of the design; the availability of alternative designs; and whether a particular design results from a comparatively simple or cheap method of manufacture." *Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.,* 870 F.2d 512, 516 (9th Cir. 1989).

In this case, the factors weigh in favor of nonfunctionality. Polaris concedes that the Model 180 was covered by now-defunct patents. Defendant has provided copies of these patents as exhibits. *See* Declaration of Sanford F. Campbell in Support of Defendant Letro Products, Inc.'s Memorandum in Opposition to Plaintiff Polaris Pool Systems, Inc.'s Motion for a Preliminary Injunction, Exhs. 7, 8, and 9. Polaris alleges, however, that these patents covered the internal mechanisms, not the external appearance, of the Model 180. A cursory view of these patents suggests that this appraisal is correct. Therefore, the patents do not support the assertion that the Model 180's configuration is functional.

Polaris has provided several advertisements as exhibits. *See* Lowry Declaration; Declaration of Gregory A. Ritter in Support of Plaintiff's Application for Temporary Restraining Order-and-Motion for Preliminary Injunction. These advertisements, however, appear to promote the new Polaris models and not the Model 180. Even so, while Polaris' advertising promotes the effectiveness of the pool cleaner on the basis of its design, it is not clear that design elements of the type which are alleged to be similar here are the same type of elements praised in the advertising. Thus, this factor appears to support a finding of nonfunctionality.

As for the third factor, Polaris points out that there is a wide variety of configurations of pool cleaners. Such variety is a strong sign of nonfunctionality. Clearly, Letro did not need to make its pool cleaner in the same configuration as Polaris'. Moreover, Letro has created other pool cleaners with different configurations. In light of this wide variety, Polaris' design does not appear to be essential to the product's use. Thus, this factor weighs heavily in favor of a finding of nonfunctionality.

No evidence has been presented that production of the Model 180 involved simple or inexpensive manufacture. In fact, Polaris pool cleaners are relatively expensive (approximately $700 each), and thus, it does not appear that Polaris chose the Model 180 configuration as a means of reducing the costs of production. This factor, then, also supports a finding of nonfunctionality.

Based on all of these factors, the product configuration is probably nonfunctional.

### B. Secondary Meaning

#### 1. *Trademark Registration*

Although a certificate of registration can also be prima facie evidence of secondary meaning, it will not be relied upon as such at this time for the reasons suggested above.

#### 2. *Other Evidence of Secondary Meaning*

Secondary meaning can otherwise be determined by considering "whether actual purchasers associate the [product's] trade dress with [plaintiff], the degree and manner of [plaintiff's] use of the trade dress, and whether [plaintiff's] use of the trade dress has been exclusive." *Qualitex,* 13 F.3d at 1304.

■ The Polaris Model 180 configuration has acquired secondary meaning. Polaris contends that consumers associate the trade dress with Polaris because Polaris alone has marketed the product for twenty years. Even if Polaris' Model 180 patents were the only reason for Polaris' exclusive marketing during that period, Polaris' claim is still valid. The appearance of Polaris' pool cleaner has changed only slightly over the years and remains quite different from the appearance of other manufacturers' pool cleaners. Moreover, the product is used in Polaris' advertising campaigns and as its logo. "Evidence that the manufacturer has used and advertised the product over a substantial period of time is sufficient to establish secondary meaning." *Id.* Therefore, Polaris has

demonstrated that its pool cleaner's trade dress has acquired secondary meaning.

## C. Likelihood of Confusion

■ The analysis of this element suggests that Polaris is not entitled to relief. There are several factors to consider in determining whether a likelihood of confusion exists. These factors include "the strength of the mark, the similarity of the mark, the class of goods and marketing channels, evidence of actual confusion, the intent of the second user, the degree of care likely to be exercised by the purchaser, and the likelihood of expansion of the product lines." *Qualitex,* 13 F.3d at 1305.

### 1. *Strength of the Mark*

Polaris seemingly can only provide support for the first factor. Polaris' success over the years with product sales may be evidence of the mark's strength. As for the other factors, however, Polaris cannot carry its burden.

### 2. *Similarity of the Mark*

The products at issue are only somewhat similar. They have the same basic shape, but the Legend is bigger. The Model 180 is blue and white, and the Legend is teal and white. The blue and teal are substantially different shades and remain so even when the Model 180's shell fades. Moreover, the different product names and manufacturers are clearly indicated on the products. Most importantly, Polaris' Model 180 is no longer on the market, and the current Polaris models, the Model 360 and the Model 380, are different in appearance from the Legend. They have fewer wheels and are smaller. Thus, the Court finds that Letro prevails on this factor.

### 3. *Class of Goods and Marketing Channels*

Polaris and Letro do sell their products to the same market. As indicated, though, the Model 180 is no longer on the market, and the appearance of the current Polaris models is different. In addition, both parties' products are expensive ($500–$700 each) and would be considered high-class goods. That Letro does not plan to put an inferior product on the market is actually a point in favor of Letro. Thus, this factor probably weighs in favor of Letro.

### 4. *Evidence of Actual Confusion*

Polaris has provided no evidence of actual confusion, probably because Letro's product has not yet entered the market. When it does enter the market, though, it will not be in direct competition with the Model 180 because that product is no longer sold. Letro's argument here clearly is more persuasive.

### 5. *Intent of the Second User*

There is no evidence that Letro intended to confuse consumers. Letro appears to have tried to borrow ideas that were no longer protected by patents, although Polaris contends the patents only protected internal mechanisms. Letro calls its product the "Legend," possibly in an attempt to play off the Model 180's familiarity, but Polaris has no claim on the word, "legendary." This factor probably weighs in favor of Letro.

### 6. *Degree of Care Likely to Be Exercised by Purchaser*

The degree of care to be exercised by the consumers is an important consideration. Because these pool cleaners are expensive, consumers will probably pay attention to the brand they purchase. If they want to buy a Polaris pool cleaner, they will make sure they are buying a Polaris pool cleaner. Letro has the more persuasive argument here.

### 7. *Likelihood of Expansion of Product Lines*

As for the last factor, no evidence has been presented of product line expansion, and thus, this factor cannot be analyzed at this time.

Based on the factors that have been considered, Polaris has failed to prove a likelihood of confusion. On this basis, Polaris cannot prove its case for trademark infringement.

## III. *Irreparable Injury*

Because Polaris has not proven the elements of trademark infringement, it is not likely to succeed on the merits. Therefore, it is unnecessary to consider irreparable injury,

but it is worth noting that Polaris has not provided any evidence of irreparable injury. Apparently, Polaris is concerned about competition from Letro, but such competition is normal and should not be discouraged. Moreover, the Model 180 and the Legend are not currently and will never be in direct competition. Letro has spent a great deal of money developing the Legend, but it has not yet marketed the product. Nevertheless, it would be harmed financially by an injunction against the product's distribution.

## IV. *Serious Questions Going to the Merits*

Polaris has not offered a convincing case of trademark infringement. It appears, then, that Polaris has not raised serious questions going to the merits. Polaris has not demonstrated that were Letro to begin selling the Legend, consumers would be confused by the similarity of the products. Thus, it is not necessary to prevent a change in the status quo.

## V. *Balance of the Hardships*

Because Polaris has failed to raise serious questions going to the merits, it is unnecessary to consider the balance of hardships. However, as suggested above, it appears that Letro would be harmed more than Polaris if an injunction were to issue at this time.

## VI. *Conclusion*

Polaris has not satisfied either of the tests for issuance of a preliminary injunction. Therefore, the Court denies plaintiff's motion.

**IT IS SO ORDERED.**

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

## IT IS HEREBY ORDERED:

Plaintiff POLARIS POOL SYSTEMS, INC.'s (hereinafter "Polaris") Motion for Reconsideration of Order Denying Preliminary Injunction came before this Court for review on March 13, 1995. After careful consideration, the Court hereby DENIES plaintiff's motion.

## BACKGROUND

Plaintiff Polaris has sued defendant LETRO PRODUCTS, INC. (hereinafter "Letro") under federal law for infringement of trademark registration, false designation of origin, and false representation, and under California law for trademark/trade dress infringement, unfair competition, and an accounting. The claims arise from the alleged similarities between Polaris' pool cleaner, the Model 180, and Letro's new "Legend" pool cleaner. Polaris alleges similarities in the products' configurations and blue and white color schemes.

On February 3, 1995, this Court denied plaintiff's motion for preliminary injunction. Plaintiff failed to demonstrate a likelihood of success on the merits or irreparable injury. Although plaintiff succeeded in demonstrating that its pool cleaner's trade dress was nonfunctional and had acquired secondary meaning, the Court found that plaintiff had not proven a likelihood of confusion. In analyzing the likelihood of confusion, the Court considered factors drawn from *Qualitex Co. v. Jacobson Products Co., Inc.*, 13 F.3d 1297, 1305 (9th Cir.1994). Polaris could demonstrate the strength of its mark, but it could not satisfy the factors of similarity of the mark, class of goods and marketing channels, evidence of actual confusion, intent of the second user, and degree of care likely to be exercised by purchaser. The Court did not consider the factor of likelihood of expansion of product lines because it did not have enough information to properly analyze this factor.

Polaris now brings this motion to reconsider the denial of the motion for preliminary injunction on the grounds that the Court's likelihood of confusion analysis reflects a misunderstanding of the facts. Defendant opposes the motion and seeks sanctions.

## DISCUSSION

### I. *Motion for Reconsideration*

Pursuant to Local Rule 7.16, a party may seek reconsideration of an order if the party can demonstrate "a manifest showing of a failure to consider material facts presented to the Court before such decision." In this

case, the Court found that there was no likelihood of confusion primarily because the Polaris Model 180 is no longer manufactured and has been replaced by more advanced models. Thus, the Model 180 could not compete with the Letro Legend. Polaris contends that the Court did not consider evidence which suggests that the Model 180 is still on the market.

## II. *The New Information*

According to Polaris, Model 180 rebuild kits, which contain replacement parts for Model 180's, are still sold in stores. Polaris also indicates that some dealers still have on their shelves Model 180's produced in 1993, the last year of their production. Polaris allegedly conducted a "marketplace investigation" after the Court issued its order and learned that approximately 100 dealers nationwide still have Model 180's on their shelves. *See* Declaration of Gregory A. Ritter in Support of Plaintiff/Counterdefendant's Motion for Reconsideration of Order Denying Preliminary Injunction (hereinafter "Ritter Declaration"), ¶ 9. Moreover, Polaris contends that it may at some point decide to renew production of Model 180's. *See* Ritter Declaration, ¶ 7. Lastly, Polaris takes issue with the Court's description of the differences in appearance between the Model 180 and the Legend.

The Court will reconsider each of the *Qualitex* factors in light of the new information presented by Polaris.

## III. *Likelihood of Confusion Factors*

### A. Strength of the Mark

The Court found that Polaris prevailed on this factor because of its success over the years with product sales. The new information does not change this analysis.

### B. Similarity of the Mark

Polaris criticizes the Court's analysis of this factor, which was resolved in favor of Letro. In its analysis, the Court noted that the Model 180 and the Legend are only somewhat similar because the Legend is larger, the products' colors are substantially different, and the product names and manufacturers are clearly indicated on the products' shells. The Court also noted that the Legend is even more different in appearance than the new Polaris models, the 360 and 380.

Polaris points out that the Legend is not larger than the Model 180. The shell of the Model 180 may actually be a bit larger, although the Legend is larger than the new Polaris models. Even if the Model 180 and Legend are the same size, however, there are several other differences. In addition to the ones mentioned in the Court's prior order, the Legend's shell is more angular than the Model 180's, and the wheels of the Legend have a design on them that does not appear on the wheels of the Model 180. Thus, Letro still prevails on this factor.

Although Polaris contends that the existence of rebuild kits affects this analysis, the rebuild kits are substantially different products than the Model 180 and the Legend. The kits contain parts; there is no resemblance to the fully-assembled product. Thus, the existence of rebuild kits does not change this analysis.

### C. Class of Goods and Marketing Channels

The Court previously resolved this factor in favor of Letro on the basis that both the Polaris products and the Legend are expensive, high-class goods. The Court also noted that because the Model 180 was no longer manufactured, it was not being sold in the same market as the Legend.

Assuming that certain 1993 Model 180's are still on the shelves, then the products are being sold in the same market. That they are sold in the same market does not mean Letro loses on this factor, however. Competition is allowed. Regardless, the competition is not too heavy if only 100 dealers nationwide are selling the Model 180. Moreover, Letro representatives went to two of the four stores identified as sellers of Model 180's and were not shown any Model 180's despite their requests. *See* Declaration of Terry Cherry; Declaration of Marta Nuban.

Polaris has also suggested that it may one day renew production of Model 180's. This

statement is pure speculation. Only if Polaris were to actually renew production of the Model 180's would the analysis of this factor potentially change.

Furthermore, the rebuild kits do not compete in the same market as the Model 180 and the Legend. They belong in the replacement parts market and are sold for approximately $260, less than half of the pool cleaners' prices. Thus, their existence does not affect the analysis of this factor.

### D. Evidence of Actual Confusion

There is no change in the analysis of this factor. Polaris has not presented any evidence of actual confusion, and thus, this factor is still resolved in favor of Letro.

### E. Intent of the Second User

Polaris still has not proven that Letro intended to confuse consumers. Although Polaris argues that use of the name, "Legend," to play off the Model 180's "legendary" status constitutes false advertising, it remains true that Polaris has no claim on the word, "legendary." It is not part of Polaris' trademark. Thus, the new information does not change this analysis.

### F. Degree of Care Likely to Be Exercised by Purchaser

In its prior order, the Court indicated that because these pool cleaners were expensive, consumers would be careful about which product they were buying and would be less likely to inadvertently purchase a similar product. Rebuild kits are less expensive and are designed for a particular group of consumers, long-standing Model 180 owners. They are not easily confused with either the Model 180's or the Legend. Moreover, they are installed by pool cleaner professionals, not consumers. Therefore, rebuild kits involve a higher degree of care as well and do not alter the analysis of this factor.

### G. Likelihood of Expansion of Product Lines

The Court did not have enough information before to analyze this factor. No new information has been provided, and thus, the Court still cannot analyze this factor.

### IV. *Conclusion*

This discussion indicates that Polaris' new information does not affect the likelihood of confusion analysis. Polaris still cannot prove a likelihood of success on the merits nor can it prove irreparable injury. Thus, the Court will not change its ruling on the motion for preliminary injunction. The Court denies Polaris' motion for reconsideration. The Court will not impose sanctions, however. Polaris has made its arguments in good faith.

**IT IS SO ORDERED.**