**POLARIS POOL SYSTEMS, INC., Plaintiff,**

v.

**LETRO PRODUCTS, INC., Defendant.**

No. CV–94–7747 JMI (Bx).

United States District Court, C.D. California.

Dec. 6, 1995.

Don W. Martens, Karen J. Vogel, Knobbe, Martens, Olson & Bear, Newport Beach, CA, for plaintiff.

Gary A. Clark, Pretty, Schroeder, Brueggeman & Clark, Los Angeles, CA, for defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

IDEMAN, District Judge.

**IT IS HEREBY ORDERED:**

Plaintiff Polaris Pool Systems, Inc.'s ("Polaris") Motion for Preliminary Injunction came before this Court for review on November 27, 1995. After careful consideration, the Court hereby DENIES Plaintiff's motion.

### BACKGROUND

Polaris' previous motion for preliminary injunction from this Court was denied on February 3, 1995. Although the Court held that Polaris' trade dress was "non-functional" and had acquired "secondary meaning," the Court held Polaris was not entitled to relief because Polaris could not prove a likelihood of confusion. The Court's decision was based in part on the fact that the Polaris Model 180, the only model which looked similar to Letro Products, Inc.'s ("Letro") "Legend," was no longer on the market.

In addition, the Court held that other factors militated in favor of Defendant including: the absence of proof that Letro intended to confuse customers; the clear labelling of Defendant's product as its own; differences in the color and shape of Polaris' Model 180 and the Letro "Legend"; the high degree of care consumers would likely exercise in buying the pool cleaner; and the absence of any evidence that Polaris intended to reintroduce the Model 180 or expand its product line.

Polaris made a motion for reconsideration of the Court's denial of its original motion for preliminary injunction. The Court denied this motion on March 30, 1995—rejecting Polaris' argument that the Court failed to properly analyze the similarity of the two products and failed to recognize that the Polaris Model 180 was still on the market.

The Court determined that even if a few models of the discontinued Polaris 180 were still in some markets and that Polaris still sold rebuild kits for the Model 180, the fact that Polaris had discontinued the Model 180 meant that the two products could not be confused.

Polaris' present Motion for Preliminary Injunction is based upon the following changed circumstances: (1) Polaris is now reintroducing the Model 180 on the market; and (2) Polaris' expert has now conducted a survey showing actual confusion by potential consumers.

### DISCUSSION

#### I. Preliminary Injunction

■ In order for a preliminary injunction to issue, the plaintiff must show either (A) "a likelihood of success on the merits and the possibility of irreparable injury" or (B) "that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1174 (9th Cir.1989).

#### II. Likelihood of Success on the Merits

■ Polaris cannot satisfy this prong of the test. A cause of action for trademark infringement requires a finding that the trademark or trade dress "(1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused with [plaintiff's] products by members of the consuming public." *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir.1993).

■ Polaris' "trade dress" is protected by Federal Trademark law. "[T]rade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir.1989). The provisions of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protect a product's trade dress. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S.Ct. 2753, 2760, 120 L.Ed.2d 615 (1992) (trademark law applicable

to trade dress); *see also International Jensen*, 4 F.3d at 822.

### A. *Non-functionality*

The Court in its order of February 3, 1995, found that the product configuration of the Model 180 *was nonfunctional.* Therefore, Polaris did, and still does, satisfy this element of trademark infringement.[1] *See* Order Denying Motion for Preliminary Injunction, entered February 3, 1995.

### B. *Secondary Meaning*

Similarly, the Court found, for purposes of a preliminary injunction, that Polaris demonstrated its pool cleaner's trade dress had acquired secondary meaning. *See id.* Nothing from the new motion or opposition changes this analysis.

### C. *Likelihood of Confusion*

The Court previously held that this element had not been satisfied. Although Plaintiff has introduced changed circumstances that may further support its claim, the analysis of this element still suggests that Polaris is *not entitled to injunctive relief.*

The factors to consider in determining whether a likelihood of confusion exists include "the strength of the mark, the similarity of the mark, the class of goods and marketing channels, evidence of actual confusion, the intent of the second user, the degree of care likely to be exercised by the purchaser, and the likelihood of expansion of the product lines." *Qualitex Co. v. Jacobson Products Co., Inc.*, 13 F.3d 1297, 1305 (9th Cir.1994).

#### 1. *Strength of Polaris' Trademark.*

The only factor which Polaris had previously demonstrated to the Court is the strength of its trademark. Polaris offers ample evidence of its mark's strength over the years and there is nothing new that would change the analysis of this factor.

#### 2. *Similarity of Mark (Trade Dress).*

The Court previously held that the products are only somewhat similar. The Court noted the clear indication of the product names and manufacturers, differences in color of the model 180 and the Legend, as well as a difference in size. Upon ruling on the Motion for Reconsideration, this Court recognized even more differences in the appearance of the two products—particularly the different angles of the products' shells and the different designs on the products' wheels. In addition, the products appear even less similar on their outer packaging than they appear when fully assembled in front of the consumer.

Plaintiff argues, again, that the products are strikingly similar. While a casual observation of the two products does suggest that the products are similar, the Court nevertheless previously has held that Letro had prevailed on this factor. Polaris argues that the results of a consumer survey confirm that the products are confusingly similar. This, however, is covered under a separate factor of the *Qualitex* test (see Evidence of Actual Confusion, *infra*) and does not affect the Court's determination of this factor.

#### 3. *Class of Goods and Marketing Channels.*

The Court previously held that Letro prevailed on this factor because Letro and Polaris had expensive, high-class goods.

#### 4. *Evidence of Actual Confusion.*

█ Polaris has now reintroduced the Model 180 and has conducted a survey[2] which Polaris claims shows actual confusion by consumers. While the parties dispute the accuracy of the survey, it does present evidence of actual confusion by individuals when shown the two products. Although this factor might now weigh in favor of Polaris, it must be noted that the survey measured irrelevant, as well as relevant, confusion. In other words, the researcher did not take adequate precautions to ensure that only confusion triggered by similarities to

---

1. The Court found, and the parties conceded, that the color scheme of the Model 180 was functional, and thus, unprotectable.

2. The survey was conducted by Dr. Helfgott. *See* Plaintiff's Motion, Declaration of Dr. Helfgott, Exh. D.

Plaintiff's *protectable* material was measured. *Cf. Tomy Corp. v. P.G. Continental, Inc.*, 534 F.Supp. 595 (S.D.N.Y.1982) (study not showing whether consumers reactions were triggered by plaintiff's protectable material failed to show secondary meaning). The evidence presented by Plaintiff is only marginal at best. Nevertheless, this factor goes toward Plaintiff in light of other courts deeming lower levels of confusion by survey participants sufficient evidence of actual confusion.[3]

#### 5. *Intent of Second User (Letro).*

■ The Court, however, previously held that there was no evidence that Letro intended to confuse consumers. To prevail on this factor, Plaintiff must show Letro had an intent to copy and derive benefit from the reputation and goodwill associated with the trade dress. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1385 (9th Cir. 1987). Plaintiff's arguments that Letro: 1) hired Polaris' past Vice President for Marketing; and 2) used some of the molds from the Polaris Model 180 to make the Letro Legend do not sufficiently demonstrate that Letro intended to confuse consumers.

The fact that Letro hired Polaris' former marketing vice president does not show intent to confuse—especially in light of Defendant's evidence that the executive was hired after the design of the Legend was initiated. *See* Opposition to Plaintiff's Motion for Preliminary Injunction, p. 26. Polaris' second argument is even less convincing because Letro only used parts that it had been making, and had the right to make, for years. Thus, the Court still finds that Letro prevails on this factor.

#### 6. *Degree of Care Exercised by Consumers.*

Additionally, the Court held in its order of February 3, 1995, that the high degree of care purchasers would exercise when buying a pool cleaner would militate against there being a likelihood of confusion. There is

nothing new that changes the Court's finding for Letro on this factor.

#### 7. *Likelihood of Expansion of Product Line.*

The Court also did not find enough evidence to evaluate whether Polaris planned to expand its product line. Polaris still has not indicated it plans to expand its product line. Thus, this factor still weighs in favor of Letro.

In sum, Polaris has not met its burden of proving a likelihood of confusion.

### III. *No Possibility of Irreparable Injury*

■ The Court previously held that Polaris did not demonstrate a likelihood of irreparable injury. Order Denying Plaintiff's First Preliminary Injunction, February 3, 1995. The Court noted that the Model 180 and the Letro would not be in direct competition because the Model 180 was being removed from the market.

Presently, Polaris has reintroduced the Model 180. Polaris, however, cannot now claim irreparable injury because their injury was only created when *Polaris* brought the Model 180 back into competition.

### IV. *Alternative Test for Preliminary Injunction*

Other courts have used an alternative test that permits plaintiff to meet its burden by showing serious questions as to these matters and the balance of hardships tips sharply in plaintiff's favor. *First Brands*, 809 F.2d at 1381. This test represents "a continuum of equitable discretion whereby the greater the relative hardship to the moving party, the less probability of success must be shown." *Regents of the University of California v. American Broadcasting Co., Inc.*, 747 F.2d 511, 515 (9th Cir.1984).

In the present case, Defendant Letro would suffer the most harm from a preliminary injunction. An injunction would preclude Letro from competing at all. Absent an injunction, Plaintiff would have to com-

---

**3.** Plaintiff claims the Helfgott survey revealed 67% confusion. The court in *Qualitex* found a survey of 39% confusion sufficient evidence of confusion. *See* 13 F.3d at 1297. *See also Lisa*

*Frank, Inc. v. Impact Int'l, Inc.*, 799 F.Supp. 980 (D.Arizona 1992) (despite numerous deficiencies, survey showing 40% confusion was probative evidence of likelihood of confusion).

pete with an allegedly infringing product—but still would be entitled to legal remedies should Plaintiff prevail on the merits. As the balance of hardships tilts in Defendant's favor, Plaintiff must present a strong and substantial showing of likely success on the merits.[4] *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 813–14 (4th Cir.1991). As previously discussed, Plaintiff has not made this showing. Thus, Plaintiff is not entitled to equitable relief.

### V. Plaintiff Should Not Receive Equitable Relief

A court of equity must take the conduct and situations of the parties into consideration when determining whether to grant injunctive relief. *See* 43 C.J.S. Injunctions § 32; 42 Am.Jur.2d, Injunctions § 35. In the present case, the Court already has denied an initial Motion for Preliminary Injunction and a Motion for Reconsideration partly because the Polaris Model 180 (the most similar of Plaintiff's products) appeared to be discontinued. Thus, the Court previously found the parties with only the Legend being marketed—aside from a few Model 180s left on the shelves of pool product suppliers.

 Although Polaris has the legal right to reintroduce its product and, indeed, may be entitled a *legal* remedy for infringement, the fact that *Plaintiff only reintroduced the product after this Court indicated that the product's discontinuation was a factor in the Court's decisions* is another reason for precluding the Plaintiff from obtaining *equitable* relief. Although the Court need not decide whether this move was a litigation tactic or a sincere and legitimate marketing decision, the Court will not reward conduct that creates a conflict the Court previously held had not existed.

### VI. Plaintiff's Request for Oral Argument

Under Local Rule 7.11, the "Court may dispense with oral argument on any motion except where an oral hearing is required by statute, the F.R.Civ.P. or these Local Rules." As set forth in this Court's "Order Re: Oral Argument," this Court has found that oral argument in civil law and motion cases for the most part is not helpful and is wasteful of the time of the Court and of Counsel. Order at 1.

In its Request, Plaintiff has not demonstrated that its written briefs are inadequate to present its position to the Court. Plaintiff's Request is Denied.

### CONCLUSION

Polaris has proven neither a likelihood of success on the merits nor greater relative hardships. Therefore, the Court *DENIES* this motion.

**IT IS SO ORDERED.**

---

4. The Ninth Circuit states "[t]he critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988).